UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>MONTEREY PLAZA HOTEL LIMITED PARTNERSHIP, et al.,<br><br>    Defendants. | Case No. 22-cv-07540-SK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COSTS**<br><br>Regarding Docket No. 184 |

This matter comes before the Court upon consideration of the motion for attorneys' fees, expenses, and costs filed by Plaintiff Francisca Moralez ("Plaintiff"). (Dkt. No. 184.) This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367(a), and all parties have consented to magistrate judge jurisdiction. (Dkt. No. 167.) Having carefully considered the parties' papers, relevant legal authority, and the record in the case, and having had the benefit of oral argument, the Court hereby GRANTS IN PART and DENIES IN PART the motion for attorneys' fees, expenses, and costs.

## BACKGROUND

This is a disability access case seeking to bring certain facilities in the Cannery Row area of Monterey, California into compliance with the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973, California's Unruh Act, and other California statutes. On November 30, 2022, Plaintiff filed suit against numerous Defendants who control the relevant property, including the City of Monterey (the "City"), who is the only Defendant implicated in this motion. (Dkt. No. 1.) Plaintiff twice amended her complaint to add more detailed allegations and to modify the Defendants. (Dkt. Nos. 41, 111.)

The previous presiding judge noted that the City was responsible for some delay in this

case. The City delayed serving its initial disclosures under General Order 56 because of its mistaken belief that discovery had been paused. (Dkt. No. 71.) Once the Court filed an order to show cause regarding this failure, the City served its initial disclosures. (*Id.*; Dkt. No. 70.) In addition, the City failed to schedule and attend a settlement conference by the stipulated deadline. (Dkt. No. 71.) The City's position was that no settlement conference could take place prior to considering "the jurisdiction of the Coastal Commission, environmental impacts reports, and traffic studies" or the necessity of a City-wide vote. (Dkt. Nos. 51, 71.) The previous presiding judge found these alleged requirements to be unsubstantiated and ordered the City to engage in settlement discussions. (Dkt. Nos. 71, 75.)

From October 5, 2023 to November 18, 2024, Plaintiff and the City engaged in numerous private mediations and settlement conferences with the Honorable Lisa J. Cisneros of this Court. (Dkt. Nos. 80, 87, 88, 96, 105, 138, 150.) The parties present alternative views about whether this case settled in October or December of 2024. (Dkt. Nos. 184-2, ¶ 27; 195-1, ¶ 16.) Regardless, Plaintiff and the City filed a Consent Decree on January 29, 2025, and judgment was entered against the City on January 31, 2025. (Dkt. Nos. 159, 163.) The Consent Decree obliges the City to make approximately $1.5 million worth of improvements to render certain City facilities accessible. (Dkt. No. 163.)

Plaintiff filed the instant motion for attorneys' fees and costs on June 5, 2025 to compensate her two attorneys in this matter: Timothy Thimesch and Gene Farber (collectively, "Counsel"). (Dkt. No. 184.) The parties stipulated to submit Counsel's unredacted billing records *in camera* and for Counsel to file augmented billing records. (Dkt. Nos. 188, 189, 194.) The City filed an opposition to Plaintiff's motion, and Plaintiff filed a reply. (Dkt. Nos. 195, 197.) The Court heard oral argument on July 28, 2025. (Dkt. No. 199.)

Following oral argument, the Court requested Counsel file a supplemental declaration to clarify its billing records, which were not coherent. (Dkt. No. 200.) On August 4, 2025, Counsel submitted a responsive declaration that did not include the information requested and that included numerical discrepancies suggestive of inaccuracy. (Dkt. No. 202.) The next day, the Court issued an Order explaining these issues and providing Counsel with one final opportunity to accurately

2

1  file the information originally requested. (Dkt. No. 203.) Counsel filed a new submission on

2  August 13, 2025. (Dkt. No. 206.) On August 20, 2025, the City filed a declaration that pointed

3  out unexplained inconsistencies between Counsel's most recent submission (Docket Number 206-

4  1) and earlier submissions, as well as other objections to Docket Number 206-1. (Dkt. No. 207.)

**ANALYSIS**

**A.    Legal Standard.**

Both the ADA and the Unruh Act allow a "prevailing party" to recover reasonable attorneys' fees and costs. 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). The Ninth Circuit has explained that:

> A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. The district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights case and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less.

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (internal quotation marks and citations omitted).

In California, both state and federal counts determine a reasonable fee award using the lodestar method, which calculates fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987); *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001).

When the district court makes its award, it must provide a "concise but *clear*" explanation of how it came up with the amount. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (quoting *Hensley*, 461 U.S. at 437).

**B.    Plaintiff's Motion.**

The parties do not dispute that Plaintiff is the prevailing party and is thus entitled to reasonable attorneys' fees and costs. (Dkt. No. 184-1, p. 12; Dkt. No. 195.) Counsel originally sought attorneys' fees and costs in the amount of $1,227,530, (Dkt. No. 184-1, p.7), and amended

1  their request to $1,249,454 to add fees incurred preparing the reply brief, (Dkt. No. 197, p. 20.)[1]

2  The City argues that this request in unreasonably high. (Dkt. No. 195.)

**C.    Attorney Rates.**

To determine whether counsel's hourly rates are reasonable, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (citation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id.* The fee applicant bears the burden to produce sufficient evidence that the rates claimed for its attorneys are in line with prevailing market rates. *See Hensley*, 461 U.S. at 433.

There are two typical ways to establish the prevailing market rate for an attorney: (1) "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community," and (2) "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney." *U. Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Where counsel submits declarations, the Court must consider those declarations and explain "why those declarations did or did not establish the prevailing hourly rate in the district." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019).

Both Thimesch and Farber seek hourly rates of $1,000. (Dkt. No. 184-1, p. 15.) The City requests the Court approve no more than $450 per hour. (Dkt. No. 195, pp. 15, 18.)

**1.    Declarations.**

Counsel submitted declarations from themselves (Thimesch and Farber), a retained attorney fee expert (John O'Connor), and eight other attorneys. (Dkt. No. 184-4.)

These declarants each attest to the significant experience of Counsel. Thimesch has practiced law for 35 years, at least 29 years of which have been focused on ADA practice. (Dkt. No. 184-2, ¶¶ 38-39, 47.) Thimesch has served as counsel in several ADA actions involving significant construction and alteration liability. (*Id.* at ¶ 51.) Farber has practiced law for over 55

---

[1] Counsel subsequently submitted revised billing records, which included "limited corrections of the time entries." (Dkt. No. 206.) Although these corrections likely affect the overall calculation, Counsel did not indicate any corresponding adjustment to the amount of fees requested. (*Id.*)

years and has "focused on representing disabled Californians" since 2005.  (Dkt. No. 184-3, ¶¶ 2, 24.)  However, it is not clear whether Farber has experience with disability access cases, as his declaration only makes reference to a personal injury case.  (*Id.* at ¶ 24.)  Farber also has legal and business experience on matters unrelated to disability litigation.  (Dkt. No. 184-3, ¶¶ 2-23.)  The Court accepts that Thimesch and Farber are qualified and should be compensated at rates commensurate with their experience.

The declarants all express the opinion that Counsel's experience and work on this case should command $1,000 per hour rates.  (Dkt. Nos. 184-2-184-13, 197-1.)  However, the declarants do not offer any relevant support for these assertions.  For example, retained attorney fee expert John O'Connor references a $1,200 hourly rate in *Young et al v. The Leland Stanford Junior University et al*, No. RG17877051 (Cal. Sup. filed Sep. 28, 2017).  (Dkt. No. 184-5, ¶ 44.)  However, *Young* was a highly publicized whistleblower and racial harassment case involving significantly more complexity than the disability access case at bar.  *See generally Young v. Leland Stanford Junior Univ.*, No. A161237, 2021 WL 4237077, at *1 (Cal. Ct. App. Sept. 16, 2021).  Similarly, attorney Guy Wallace states that Catherine Cabalo is a comparator of Thimesch and charged a "2025 rate of $1,000 per hour."  (Dkt. No. 184-8, ¶ 13.)  However, Wallace does not explain how he knows Cabolo's rate, the type of case, and whether this rate was approved by a court.  The remaining comparators are likewise either distinguishable or insufficiently detailed to permit a meaningful comparison.  Accordingly, the declarations do not establish the prevailing hourly rate for disability access cases in the district.

**2. Rate Determinations in Other Cases.**

Counsel did not identify any recent cases in this district determining their rates, and the Court was unable to locate any.  A review of rate determinations in similar circumstances demonstrates that Counsel's request is out of step with prevailing market rates in this district.  "For attorneys with approximately 20 or more years of experience, courts have generally approved rates ranging from $350 to $495 in disability cases."  *Johnson v. Rocklin of California LLC*, No. 18-CV-06836-VKD, 2019 WL 3854308, at *10 (N.D. Cal. Aug. 16, 2019) (gathering cases), *report and recommendation adopted*, 2019 WL 13255736 (N.D. Cal. Sept. 6, 2019).  Courts in

1  this district have repeatedly noted that "a rate over $700/hour is the exception, and not the norm,
2  for disability cases." *Johnson v. High Noon Pizza, Inc.*, No. 21-CV-08556-JST (TSH), 2022 WL
3  22853143, at *10 (N.D. Cal. Dec. 12, 2022).
4      Here, the Court is not convinced that this litigation justifies exceptional rates. Counsel
5  contends that this case involved unusual complexity involving significant alterations and massive
6  inspections. (Dkt. No. 184-5.) While this may be true as to Plaintiff's litigation against other
7  Defendants, Plaintiff's litigation against the City involved only public sidewalks, curb ramps,
8  streetside parking, and passenger loading facilities. (Dkt. No. 163 (Ex. B).) In addition, Counsel
9  did not achieve all requested relief. For example, the City did not take responsibility for
10 improving accessibility in transportation facilities or commit to building a cliffside elevator to the
11 beach, as Plaintiff originally demanded. (Dkt. No. 163 (Ex. B).)
12     The Court finds that rates in the midpoint of the "typical" range for disability access cases
13 is appropriate here. Considering the typical range of $350 to $495, *see Johnson*, 2019 WL
14 3854308, at *10, the Court adopts $425 as the starting point for its analysis. The $350 to $495
15 range was established in 2019, and the Court recognizes that prevailing market rates for legal
16 services have increased in the years since. *See Chapman v. NJ Props. Inc.*, No. 5:16-CV-02893-
17 EJD, 2019 WL 3718585, at *4 (N.D. Cal. Aug. 7, 2019) (considering inflation), *aff'd sub nom.
18 Chapman v. Panchal*, 834 F. App'x 333 (9th Cir. 2021). To account for inflation, the Court finds
19 that a reasonable rate for Counsel in this case is $535 per hour.

20 **D.   Hours Expended.**
21     A party seeking attorneys' fees bears the burden to "document[ ] the appropriate hours
22 expended." *Hensley*, 461 U.S. at 437. "The number of hours to be compensated is calculated by
23 considering whether, in light of the circumstances, the time could reasonably have been billed to a
24 private client." *Moreno*, 534 F.3d at 1111 (citing *id.* at 434). The district court is obliged to
25 review the time billed and assess whether the hours billed were "reasonably expended"—that is,
26 not "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In addition,
27 "[w]here the documentation of hours is inadequate, the district court may reduce the award
28 accordingly." *Id.* at 433.

6

1    Counsel's lodestar calculation is based on 769.84 hours of merits work (i.e., excluding
2 work on the fees motion). (184-2, ¶ 78.) Counsel states that it did not charge for 62.1 hours of
3 attorney time to account for duplication of inefficiencies, and reduced the remaining fees for
4 merits work by 5% or $40,518 (i.e., 40.52 hours at a $1000 / hour rate). (*Id.* at ¶ 87.)
5 Accordingly, Counsel suggests that it actually expended 872.46 hours on this case and deducted
6 102.63 hours from its request. (*Id.* at ¶ 88 (providing that absent the discretionary reductions, the
7 total fees would have been $872,46 for merits work at $1,000 / hour).)

8    None of Counsel's records match up with the 769.84 hours requested or the 872.46 hours
9 purportedly expended. Counsel's timesheets submitted for *in camera* review on June 25, 2025,
10 together with the time summaries filed the same day, reflect a total of 825.89 hours expended.
11 (Dkt. Nos. 194-4, 195-5.) Of this total, 78.6 hours were devoted to the fees motion, leaving
12 747.29 hours attributable to merits work. (*Id.*) Counsel's August 4, 2025 submission included
13 three charts with three conflicting totals, ranging from approximately 810 to 855 hours, including
14 time devoted to the fees motion. (Dkt. No. 202-1.) Counsel's August 13, 2025 submission
15 documents 828.19 hours expended, 745.64[2] of which were devoted to merits work. (Dkt. No. 206-
16 1.)

17    In light of these discrepancies, the relationship between Counsel's hours expended and
18 hours requested is unclear. Notably, Counsel's records do not confirm that 102.63 hours were
19 deducted or show where these deductions were made. Accordingly, the Court will proceed by
20 basing its calculations from Counsel's most recent submission—Docket Number 206-1—rather
21 than working from Counsel's proposed lodestar.

22    According to Docket Number 206-1, Counsel expended 745.64 hours on merits work.

23    **1. Hours Expended on Travel.**

24    Counsel billed 93.85 hours of time spent in transit, including time spent travelling from
25 Counsel's residences to Monterey. (Dkt. No. 206-1, at 270, 319, 332.)

26    The City argues that Counsel should not bill at its regular hourly rate for travel time. (Dkt.

27
28    [2] The Court, not Counsel, calculated this figure based on Counsel's submission at Docket Number 206-1. The remainder of this Order includes subtotals calculated in the same manner.

7

1  No. 195, p. 19.)  The Court agrees with the City that Counsel should not charge their full hourly

2  rate for time spent in transit.  Courts within this Circuit have frequently reduced travel time by half

3  to create a reasonable rate, in recognition of the fact that "the distractions associated with travel . .

4  . likely reduced the attorneys' effectiveness while en route."  *In re Washington Pub. Power Supply*

5  *Sys. Sec. Litig.*, 19 F.3d 1291, 1298-99 (9th Cir. 1994); *Richards v. Chime Fin., Inc.*, No. 19-CV-

6  06864-HSG, 2021 WL 2075689, at *11 (N.D. Cal. May 24, 2021).  Accordingly, the Court finds

7  that the hours billed for travel time should be reduced by half to 46.93 hours.

**2. Hours Expended on Discovery and Summary Judgment Motion.**

9  No formal discovery or motion practice was completed in this case.  However, Counsel

10  billed 20.2 hours to the City for discovery, (Dkt. No. 206-1, at 123, 133, 135, 137, 139, 141 ), and

11  50.3 hours to the City for researching and drafting a motion for summary judgment that was not

12  filed. (*Id.* at 188, 314).  The City argues that this work was unnecessary because it was completed

13  when the parties were already in settlement talks.  (Dkt. No. 195, pp. 19-20.)  Counsel replies that

14  the work was completed before the case was close to settlement, and that the City did not agree to

15  the Consent Decree until its discovery response deadlines were looming.  (Dkt. Nos. 184-1, p. 7,

16  197, pp. 14-15.)

17  As the Ninth Circuit has repeatedly instructed, the Court will "defer to the winning

18  lawyer's professional judgment as to how much time he was required to spend on the case."

19  *Moreno*, 534 F.3d at 1112.  Given that Counsel undertook this case on a contingency basis with an

20  uncertain payoff, they "are not likely to [have spent] unnecessary time . . . in the hope of inflating

21  their fees."  *Id.*  It follows that "extensive authority supports awarding fees for time spent on

22  unfiled motions."  *Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1125 (C.D. Cal. 2012)

23  (rejecting argument that hours worked on unfiled summary judgment motion should be reduced

24  and gathering cases).  Likewise, the Court will not second-guess Counsel's choice to propound

25  discovery.  The threat of expensive discovery is often a driver of settlement.  And contrary to the

26  City's assertions, Counsel had no assurance that the matter would settle until it did in fact settle.

27  "[I]f Defendants had wished to not pay [Counsel's] fees, Defendants could have settled earlier."

28  *Id.*

8

1  The Court denies the City's request to reduce the fees incurred propounding discovery and
2  preparing the motion for summary judgment.[3]

### 3. Apportionment of Joint Hours.

In cases involving multiple defendants, apportionment of fees is mandated when the time expended against each defendant is disproportionate. *Jones v. Espy*, 10 F.3d 690, 691 (9th Cir. 1993). Mandatory apportionment is necessary to "ensure that a defendant is not liable for a fee award greater than the actual fees incurred against that defendant." *Id.* A district court must apportion fees when the time expended by the plaintiff in pursuing each defendant, or between successful claims and unsuccessful claims, was grossly unequal. *El–Hakem v. BJY Inc.*, 415 F.3d 1068, 1075, 1075 (9th Cir. 2005); *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir. 1991). On the other hand, apportionment is not appropriate when the work against all defendants was intertwined, as when "a single incident led to the liability of all of the defendants." *Corder*, 947 F.2d at 383.

Counsel allocated 50% of all joint hours to the City. The City contends that this allocation is inappropriate because the City did not generate 50% of the work underlying the joint time entries. (Dkt. No. 195, p. 11.) As the City points out, and Counsel does not dispute, the City accounts for only 5% of the named Defendants, 27% of the claims, 3.5% of the barriers, and 1.8% of the documents referenced in the Consent Decree. (*Id.*)

Here, apportionment is necessary. Plaintiff is still pursuing claims against certain Defendants. Whether Plaintiff is the prevailing party against these remaining Defendants is still an open question. As such, it would be inappropriate for Counsel to recover fees related to work against the remaining Defendants. Moreover, this is not a situation in which all Defendants share liability for a single incident. Rather, each Defendant was responsible for different properties. For example, Counsel cannot charge the City for time spent investigating properties belonging to the Hotel.

---

[3] The City also specifically objects to hours billed for pleadings, investigation, subpoenas, and settlement conferences. (Dkt. Nos. 195, 207.) Because these objections rest on billing discrepancies and improper joint billing, they are resolved through the Court's across-the-board reductions for inappropriate apportionment and inadequate documentation.

Counsel argues that some hours should be split between the City and the Hotel because these Defendants shared responsibilities for certain properties. (Dkt. No. 184-1 at p. 9.) However, Counsel has not demonstrated that its litigation against the City generated 50% of the joint work. For instance, Counsel allocates 50% of the hours spent preparing the barrier reports to the City, despite the fact that the vast majority of the reported barriers pertain to the Hotel. (*Compare* Dkt. No. 111-1 (full barrier report) *with* Dkt. No. 111-3 (barriers attributed to the City).) Similarly, Counsel allocates 50% of the time spent preparing for and participating in joint settlement conferences to the City, regardless of the actual portion of time devoted to City-specific issues.

The City requests that no more than 10% of the joint time be allocated to the City. (*See* Dkt. No. 195.) Given the City's comparatively small role in this case, the Court finds that the City's proposal is appropriate. Accordingly, the hours billed to the City for joint time shall be reduced from 50% to 10%. Pursuant to the Court's travel adjustment, 337.37 joint hours remain. These hours shall be reduced to 67.47 hours.

### 4. Inadequate Documentation.

District courts may reduce attorneys' fees for inadequate documentation of hours. *Hensley*, 461 U.S. at 433. In *Gonzalez v. City of Maywood*, 729 F.3d 1196 (9th Cir. 2013), the Ninth Circuit provided the following guidance on inadequate documentation:

> [I]f the fee applicant submits billing records that are so poorly organized that the district court cannot practicably rely on them to determine a reasonable number of hours, the district court may hold the applicant to its burden in several ways. First, the district court could simply cut the number of hours or the lodestar figure by as much as 10% (without explanation). Second, the district court could order the fee applicant to re-format and re-submit its billing records. Third, the district court may itself re-structure the fee applicant's billing records into a usable format. Finally, in an egregious case, and particularly where the other approaches have been tried without success, a district court may throw up its hands and refuse to award any fees whatsoever.

*Id.* at 1204 n.4 (citations omitted, cleaned up).

The Court finds that Counsel's billing documentation is inadequate. As explained *supra* pp. 2-3, 7, the Court twice directed Counsel to re-format and re-submit billing records and to explain any corrections. Nevertheless, Counsel's records continue to contain unexplained inconsistencies. In their most recent submission, Counsel states that "extremely limited

corrections of the time entries were made to account for prior column errors and to delete a few previously missed duplications. But these limited changes do not affect the lodestar . . . ." (Dkt. No. 206, ¶ 8.) Counsel thus acknowledges prior errors in its submissions, but there is no assurance as to the accuracy of Docket Number 206-1 or any explanation of the process employed to verify its reliability. Further, Counsel is incorrect that these changes do not affect the lodestar. A change in the total hours certainly affects the total award. In addition, the City points out numerous other inconsistencies between Docket Number 206-1 and prior submissions. (Dkt. No. 207.)

The timesheets submitted for *in camera* review reveal numerous errors in Counsel's timekeeping. For example, Thimesch's timesheet reflects hours billed on October 2 and November 9, 2025—dates that have not yet occurred as of the date of this Order. Thimesch also records 31 hours for inspection of City facilities over a four-day period, March 5-8, 2023. These entries are inconsistent with Counsel's prior representation to the Court that the physical inspection of the City's facilities occurred in a single day, March 6, 2023. (Dkt. No. 94.) Counsel also erroneously billed a settlement conference on November 18, 2024, rather than the correct date of November 8, 2024, apparently replicating an error in the docket. (Dkt. No. 206, ¶¶ 10–12.) While the Court accepts that this mistake was made in good faith, it remains an error which creates the impression that Counsel created these billing records after the fact and not contemporaneously. More concerning, Farber's timesheet allocates hours to the City for participation in a settlement conference on February 23, 2024, despite the record showing that the City did not attend that conference. (Dkt. No. 91.)

Given the unexplained inconsistencies, the numerous erroneous entries, and the absence of any meaningful explanation as to how such errors have been corrected, the Court cannot place confidence in the reliability of Counsel's billing documentation.

At this juncture, the Court finds that a 10% reduction in Counsel's overall hours is warranted to account for inadequate and erroneous documentation. *See Gonzalez*, 729 F.3d at 1204 n.4. The Court has already afforded Counsel two opportunities to revise and correct their submissions, to no avail. District courts have discretion to impose up to a 10% reduction without explanation. *Moreno*, 534 F.3d at 1112. Here, the Court explains its reduction as necessary to

offset Counsel's evident overbilling and unreliability. *See Johnson v. AutoZone, Inc.*, No. 17-CV-02941-PJH, 2019 WL 2288111, at *8 (N.D. Cal. May 29, 2019) (reducing reported hours across-the-board by 10% to account for unreliability). The Court thus reduces Counsel's total merits hours from 428.82 to 385.94.

### 5. Summary.

In sum, the Court modifies Counsel's hours expended as follows:

|  | City Hours | Joint Hours | Thimesch | Farber | Total |
|---|---|---|---|---|---|
| **Merits Hours Billed** | 376.35 | 369.29 | 575.09 | 170.55 | 745.64 |
| **50% Travel Reduction** | -15.00 | -31.93 | -37.45 | -9.48 | -46.93 |
| **80% Joint Hours Reduction** | No change | -269.89 | -163.79 | -106.10 | -269.89 |
| **10% Inadequate Billing Reduction** | -36.14 | -6.75 | -37.38 | -5.50 | -42.88 |
| **Total** | 325.22 | 60.73 | 336.46 | 49.48 | 385.94 |

## D.   Calculation of the Lodestar.

After applying the foregoing reductions to attorney rates and hours, the resulting lodestar figure is:

|  | Hours Awarded | Rate | Lodestar Figure |
|---|---|---|---|
| **Thimesch** | 336.46 | $535 | $180,007.81 |
| **Farber** | 49.48 | $535 | $26,470.46 |
| **Total** | 385.94 | $535 | $206,478.27 |

## E.   Multiplier.

Unlike Federal law, California civil rights statutes allow a lodestar multiplier when the litigation "involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services."

12

*Ketchum*, 17 P.3d at 741. The purpose of applying a multiplier "is to fix a fee at the fair market value for the particular action." *Id.* "When a plaintiff in federal court prevails under both federal and state law, the district court may apply the more generous provisions of state law in calculating a fee award, such as including a multiplier for contingent fee risk." *Rodriguez v. Barrita, Inc.*, 53 F. Supp. 3d 1268, 1286 (N.D. Cal. 2014) (quotation marks and citation omitted).

The fee applicant bears the burden of proving the multiplier is warranted. *Ketchum*, 17 P.3d at 746. In determining whether a multiplier is warranted, courts consider "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id.* at 741. "[W]hen determining the appropriate enhancement, a trial court should not consider these factors to the extent they are already encompassed within the lodestar." *Id.* at 746.

Counsel requests the Court multiply its lodestar calculation by 1.5. (Dkt. No. 184-1, pp. 18-21.) The City argues a multiplier is not warranted in this case. (Dkt. No. 195, pp. 20-22.)

Here, applying a multiplier is not warranted under the *Ketchum* factors. First, the Court is skeptical that the issues at stake, which primarily involved remediation of a sidewalk, are novel and difficult. Even if these issues were novel and difficult, Counsel has provided no indication that their rates and hours do not already account for this difficulty. *See Ketchum*, 17 P.3d at 746 ("[F]or the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar."); *Rodriguez*, 53 F. Supp. 3d at 1287 ("The difficulty and novelty of the underlying legal issues are reflected in the significant number of hours logged over the course of this litigation, and in the skill (and thus the rate) of the attorneys working on plaintiff's behalf.").

The second factor—Counsel's skill—is similarly accounted for in the hourly rates. *See id.* ("Counsel's skill is evidenced by its sizeable hourly rates."); *Brown v. Sonoma Cnty. Land Co.*, No. 17-CV-00913-RMI, 2023 WL 2959993, at *5 (N.D. Cal. Apr. 14, 2023) (explaining that the court considered counsel's skills in calculating the lodestar).

Third, this case was not unusually preclusive of other work. Thimesch, who billed

13

significantly more hours than Farber, averaged fewer than three hours per week over the course of the litigation. That figure leaves ample time to pursue other work.

Fourth, the contingent nature of the fee award is already encompassed within Counsel's hourly rate. As another court in this district has explained:

> [W]here the relevant legal market already compensates for contingency risk, it would be inappropriate to enhance a fee award based on the contingent nature of the underlying case. Here, Counsel are being compensated at substantial hourly rates that are based on, among other things, the approximate market price for disability access attorneys of similar skill and experience in the Bay Area. For [counsel] and their peers, contingency arrangements are a normal feature of representing plaintiffs in disability access cases. Presumably, therefore, the often-contingent nature of disability access work is priced into these attorneys' market rates.

*Rodriguez*, 53 F. Supp. 3d at 1286-87 (citations omitted). Thimesch similarly explained that disability access practitioners account for contingent risk by "setting the fee to reflect the risk of loss." (Dkt. No. 184-2, ¶¶ 43, 44.) In these circumstances, the contingent nature of the fee arrangement does not justify a multiplier.

In sum, the fair market rate for Counsel's services is already reflected in the lodestar and does not require further augmentation.[4]

### F. Fees on Fees.

Time spent in establishing entitlement to statutory attorneys' fees and the amount of the fee is compensable. *Camacho,* 523 F.3d at 981. However, because fee motions "require[] the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation." *I.N.S. v. Jean*, 496 U.S. 154, 163 n.10 (1990). Accordingly, courts within the Ninth Circuit may "apply[] the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award." *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 909 (9th Cir. 1995). Alternatively, district courts may reduce the fee-on-fee

---

[4] District courts may also adjust the lodestar based on the factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992). The *Kerr* factors only warrant adjustment in rare and exceptional cases. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Further, the *Kerr* factors overlap considerably with the *Ketchum* factors, and neither party makes arguments for adjustment under the *Kerr* factors. Accordingly the Court does not find that the *Kerr* factors warrant deviation from the lodestar.

1  award by 50% where that amount exceeds the percentage by which the plaintiff prevailed on the
2  underlying fee motion. *Id.*
3        Counsel requests $56,960 for work completed on the instant motion for attorneys' fees.
4  (Dkt. No. 197, p. 20.) The City argues this request is excessive and should be reduced in
5  proportion to Counsel's success on the fee motion. (Dkt. No. 195, p. 22.) Here, Counsel
6  requested $1,154,760 in fees for merits work, (Dkt. No. 197, p. 20). The Court agrees that the fees
7  of $56,960 for a motion for attorneys' fees is excessive. The fees are excessive partially because
8  Counsel probably incurred additional fees in providing incomprehensible records and could not
9  provide a coherent explanation of fees, despite the Court's requests. Because the Court is
10 awarding $206,478.27, or 18% of the merits fees, the Court finds a reduction is appropriate in this
11 area. Because the fees on fees request does not suffer from the numerous billing errors affecting
12 the merits request, but only from the same credibility concerns, the Court will apply a smaller
13 reduction. The Court therefore applies a 50% reduction to reflect the degree of success on this fee
14 application, resulting in $28,480.00.

15 **G.      Expenses and Costs.**

16       The ADA authorizes a court to award litigation expenses and costs to a prevailing party.
17 *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002). Counsel seeks $37,734 for expenses and
18 costs. (Dkt. No. 197-2, ¶ 53.)
19       The City argues that Counsel waived its right to recover expenses and costs by failing to
20 file a bill of costs in accordance with the Northern District Civil Local Rules. (Dkt. No. 195, p.
21 23.) The Court rejects the City's argument. Although Civil Local Rule 54-1(a) requires a
22 prevailing party seeking costs to file a bill of costs within 14 days of entry of judgment, the parties
23 agreed to alternative procedures in their Consent Decree, which was approved by the former
24 presiding judge. (Dkt. No. 163, ¶ 35.) The parties' agreement allows Plaintiff to seek expenses
25 and costs together with this motion. (*Id.*)
26       However, the Court otherwise agrees with the City that Counsel's expenses are
27 unreasonable. The City disputes the expert fees requested for John O'Connor and the allocation of
28 joint expenses to the City. (Dkt. No. 195, p. 23.) Plaintiff's reply brief does not respond to these

arguments. (Dkt. No. 197.)

First, Counsel seeks $7,975 in John O'Connor's expert fees. (Dkt. No. 197-2, ¶ 53.) O'Connor's is a "fee expert" who opined on Counsel's claimed hourly rates. Expert fees are generally recoverable litigation expenses. *Lovell*, 303 F.3d at 1058. However, multiple courts in this Circuit have observed that fees experts provide little value and have declined or reduced reimbursement for fee expert expenses. *Dykzeul v. Charter Commc'ns Inc.*, No. 2:18-CV-05826-DSF-GJS, 2024 WL 4354866, at *6-8 (C.D. Cal. Jan. 16, 2024) (explaining that most of O'Connor's declaration was "of no use" to the court); *Johnson v. Cala Stevens Creek/Monroe, LLC*, No. 17-CV-04574-LHK, 2020 WL 2556989, at *10 (N.D. Cal. May 20, 2020) (explaining that O'Connor's declaration was not "crucial or indispensable" to the litigation); *Johnson v. Cala Stevens Creek/Monroe, LLC*, No. 17-CV-04574-LHK, 2020 WL 2556989, at *10 (N.D. Cal. May 20, 2020) (gathering cases finding O'Connor declarations "to be of limited value").

Here, O'Connor's declarations provided no meaningful assistance in determining Counsel's hourly rates. In support of Counsel's claimed rates of $1,000 per hour, O'Connor relied on his "experience" and "opinion," the Real Rate Report, and comparators. O'Connor's experience and opinions are inherently unreliable, for "parties do not present declarations from experts who do not support their positions . . . ." *Dykzeul*, 2024 WL 4354866, at *6-7. As for the Real Rate Report, the Court is capable of consulting this resource without expert assistance. *See id.* And as discussed *supra* p. 5, the purported comparator rates cited by O'Connor are not actually comparable. O'Connor's opinions about Counsel's skill and the case's complexity lack foundation and largely echo Counsel's own statements on the topic. The Court notes that O'Connor's declarations add no greater value than the eight attorney declarations submitted on Counsel's behalf, none of which incurred any charge. Accordingly, the Court declines to award reimbursement for O'Connor's $7,975 fees.

Second, Counsel's 50% allocation of joint expenses to the City is inappropriate for the same reasons 50% allocation of joint hours is inappropriate. *See supra* pp. 9-10. As with joint hours, the Court reduces the City's allocation of joint expenses from 50% to 10%. The Court thus reduces the joint expenses from $29,422.08 to $5,884.42.

1    The Court finds the remainder of Counsel's expenses and costs to be reasonable.  After
2 making the aforementioned reductions, the Court awards $6,222.12 in litigation expenses and
3 costs.

### CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for attorneys' fees, expenses, and costs.  Defendant shall pay Plaintiff $234,958.27 in attorneys' fees and  $6,222.12 in litigation expenses and costs within 30 days of the filing of this Order.

**IT IS SO ORDERED**.

Dated: August 27, 2025


_____
SALLIE KIM
United States Magistrate Judge

17